UNITED STATES *v.* POMPONIO ET AL.

No. 75–1667. Decided October 12, 1976

PER CURIAM.

After a jury trial, respondents were convicted of willfully filing false income tax returns in violation of 26 U. S. C. § 7206 (1).[1] Based on its reading of *United States* v. *Bishop,* 412 U. S. 346 (1973), the Court of Appeals held that the jury was incorrectly instructed concerning willfulness, and remanded for a new trial. 528 F. 2d 247 (1975). The United States petitioned for certiorari. We reverse.

The respondents were charged with falsifying tax returns in two principal ways: (1) they allegedly caused corporations they controlled to report payments to them as loans, when they knew the payments were really taxable dividends; and (2) they allegedly claimed partnership losses as deductions knowing that the losses were properly attributable to

---

[1] Section 7206 provides in pertinent part:

"Any person who—

"(1) . . . Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . .

.        .        .        .        .

"shall be guilty of a felony . . . ."

a corporation. Their defense was that these transactions were correctly reported, or at least that they thought so at the time.

The jury was instructed that respondents were not guilty of violating § 7206 (1) unless they had signed the tax returns knowing them to be false,[2] and had done so willfully. A willful act was defined in the instructions as one done "voluntarily and intentionally and with the specific intent to do something which the law forbids, that is to say with [the] bad purpose either to disobey or to disregard the law." Finally, the jury was instructed that "[g]ood motive alone is never a defense where the act done or omitted is a crime," and that consequently motive was irrelevant except as it bore on intent. The Court of Appeals held this final instruction improper because "the statute at hand requires a finding of a bad purpose or evil motive." 528 F. 2d, at 249. In so holding, the Court of Appeals incorrectly assumed that the reference to an "evil motive" in *United States* v. *Bishop, supra,* and prior cases meant something more than the specific intent to violate the law described in the trial judge's instruction.

---

[2] We agree with the Court of Appeals that the instructions on this point were "full and complete." 528 F. 2d 247, 249–250 (1975). The jury was told that the Government contended that respondents "couldn't claim this [the partnership losses] as a deduction . . . because by so doing they would know that they were filing a false report of their total gross income." Later the jury was instructed that, if they found the loans were incorrectly reported, they must also find that the return was "made willfully and with the specific intent and knowledge at the time they made it that it was in fact a false return." In explaining intent, the trial judge said that "[t]o establish the specific intent the Government must prove that these defendants knowingly did the acts, that is, filing these returns, knowing that they were false, purposely intending to violate the law." The jury was told to "bear in mind the sole charge that you have here, and that is the violation of 7206, the willful making of the false return, and subscribing to it under perjury, knowing it not to be true and [*sic*] to all material respects, and that and that alone."

In *Bishop* we held that the term "willfully" has the same meaning in the misdemeanor and felony sections of the Revenue Code, and that it requires more than a showing of careless disregard for the truth.[3] We did not, however, hold that the term requires proof of any motive other than an intentional violation of a known legal duty. We explained the meaning of willfulness in § 7206 and related statutes:

> "The Court, in fact, has recognized that the word 'willfully' in these statutes generally connotes a voluntary, intentional violation of a known legal duty. It has formulated the requirement of willfulness as 'bad faith or evil intent,' [*United States* v.] *Murdock*, 290 U. S. [389,] 398, or 'evil motive and want of justification in view of all the financial circumstances of the taxpayer,' *Spies* [v. *United States*], 317 U. S. [492,] 498, or knowledge that the taxpayer 'should have reported more income than he did.' *Sansone* [v. *United States*], 380 U. S. [343,] 353. See *James* v. *United States*, 366 U. S. 213, 221 (1961); *McCarthy* v. *United States*, 394 U. S. 459, 471 (1969)." 412 U. S., at 360.

Our references to other formulations of the standard did not modify the standard set forth in the first sentence of the quoted paragraph. On the contrary, as the other Courts of Appeals that have considered the question have recognized, willfulness in this context simply means a voluntary, intentional violation of a known legal duty. *United States* v. *Pohl-*

---

[3] The Court of Appeals in *Bishop* held that the evidence under the misdemeanor statute "need only show unreasonable, capricious, or careless disregard for the truth or falsity of income tax returns filed." 455 F. 2d 612, 615 (CA9 1972). This Court rejected the view that this lesser degree of culpability was required for a violation of the misdemeanor statute, and held on the contrary that "Congress used the word 'willfully' to describe a constant rather than a variable in the tax penalty formula." 412 U. S., at 359–360.

*man,* 522 F. 2d 974, 977 (CA8 1975) (en banc), cert. denied, 423 U. S. 1049 (1976); *United States* v. *McCorkle,* 511 F. 2d 482, 484–485 (CA7) (en banc), cert. denied, 423 U. S. 826 (1975); *United States* v. *Greenlee,* 517 F. 2d 899, 904 (CA3), cert. denied, 423 U. S. 985 (1975); *United States* v. *Hawk,* 497 F. 2d 365, 366–369 (CA9), cert. denied, 419 U. S. 838 (1974). The trial judge in the instant case adequately instructed the jury on willfulness. An additional instruction on good faith was unnecessary.

As an alternative ground for ordering a new trial, the Court of Appeals held that respondents were entitled to instructions exonerating them if they believed that the payments to them were loans and that the losses belonged to the partnership, 528 F. 2d, at 250. Our inspection of the record indicates that such instructions were given and that they were adequate.[4]

The respondents' other allegations of error which the Court of Appeals found it unnecessary to reach should be considered by that court in the first instance.

The petition for certiorari is granted, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[4] The instructions set forth in n. 2, *supra,* by requiring knowledge that the returns falsely reported the transactions, implicitly required knowledge of the true nature of the transactions. In addition, the jury was instructed with respect to the loans that "if you do find that they were not bona fide loans then you must next determine whether or not the defendants knew at the time they were withdrawing this money that it was not a loan . . . . In other words, you should determine whether they knew that, and as I have told you, that is an essential element." With respect to the partnership losses, the jury was told that the Government claimed that respondents "knew that they couldn't transfer [a certain asset] to a partnership, and, therefore, when they couldn't transfer it they couldn't take the benefits of any losses sustained by the partnership in question . . . ."